Citation Nr: 1205190 
Decision Date: 02/10/12 Archive Date: 02/23/12

DOCKET NO. 10-22 687 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUE

Entitlement to service connection for hearing loss.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Fleming, Counsel


INTRODUCTION

The Veteran had active military service from January 1966 to January 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska.

The Veteran testified before the undersigned Veterans Law Judge at a videoconference hearing in May 2011. A transcript of the hearing has been associated with the Veteran's claims file. 

At his May 2011 hearing before the undersigned Veterans Law Judge, the Veteran stated that he wished to withdraw from appeal a claim of service connection for erectile dysfunction. In light of the Veteran's statement, the Board considers this claim to be withdrawn and no longer in appellate status. 


FINDING OF FACT

Hearing loss was not demonstrated in service or within one year of separation from service; the Veteran's current hearing loss is not attributable to military service.


CONCLUSION OF LAW

The Veteran does not have hearing loss that is the result of disease or injury incurred in or aggravated during active military service. 38 U.S.C.A. §§ 1101, 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.385 (2011).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

At the outset, the Board will address the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000), enacted in November 2000. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, and 5107 (West 2002 & Supp. 2011). To implement the provisions of the law, VA promulgated regulations codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011). The VCAA and its implementing regulations include, upon the submission of a substantially complete application for benefits, an enhanced duty on the part of VA to notify a claimant of the information and evidence needed to substantiate a claim, as well as the duty to notify the claimant of what evidence will be obtained by whom. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). In addition, they define the obligation of VA with respect to its duty to assist a claimant in obtaining evidence. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). 

In this case, the Board finds that all notification and development action needed to arrive at a decision has been accomplished. In this respect, through an October 2009 notice letter, the Veteran received notice of the information and evidence needed to substantiate his claim. Thereafter, the Veteran was afforded the opportunity to respond. Hence, the Board finds that the Veteran has been afforded ample opportunity to submit information and/or evidence needed to substantiate his claim. 

The Board finds that the October 2009 notice letter satisfies the statutory and regulatory requirement that VA notify a claimant what evidence, if any, will be obtained by the claimant and which evidence, if any, will be retrieved by VA. See Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). In the letter, the RO also notified the Veteran that VA was required to make reasonable efforts to obtain medical records, employment records, or records from other Federal agencies. The RO also requested that the Veteran identify any medical providers from whom he wanted the RO to obtain and consider evidence. 

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. See Pelegrini v. Principi, 18 Vet. App. 112, 121 (2004). See also Notice and Assistance Requirements and Technical Correction, 73 Fed. Reg. 23,353 (Apr. 30, 2008) (to be codified at 38 C.F.R. § 3.159) (removing the prior requirement that VA specifically ask the claimant to provide any pertinent evidence in his possession). These requirements were met by the aforementioned October 2009 letter. Further, the Veteran was provided notice regarding an award of an effective date and rating criteria in the October 2009 letter. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007).

Nothing about the evidence or any response to the RO's notification suggests that the case must be re-adjudicated ab initio to satisfy the notice requirements of the VCAA. 

The Board also points out that there is no indication that any additional action is needed to comply with the duty to assist in connection with the claim on appeal. The Veteran's service treatment records have been associated with the claims file, as have records of his post-service treatment at the Omaha campus of the VA Nebraska-Western Iowa Health Care System. He has not otherwise alleged that there are any outstanding medical records probative of the claim that need to be obtained. The Veteran also underwent VA examination in November 2009. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Here, the Board finds that the VA examination obtained in this case is adequate, as it is predicated on audiological examination as well as consideration of the medical records in the claims file and the Veteran's history. The opinion addresses all of the pertinent evidence of record, to include statements given by the Veteran at the time of the examination, and provides a complete rationale for the opinions stated. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the claim on appeal has been met. 38 C.F.R. § 3.159(c)(4). Additionally, the Veteran and his representative have both submitted written argument, and the Veteran has testified before the undersigned Veterans Law Judge. Otherwise, neither the Veteran nor his representative has alleged that there are any outstanding records probative of the claim on appeal that need to be obtained.

Under these circumstances, the Board finds that VA has complied with all duties to notify and assist required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159. 

II. Analysis

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2011). Service connection may also be granted for any injury or disease diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). Generally, service connection requires: (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of an injury or disease; and (3) evidence of a nexus between the current disability and the in-service disease or injury. See Hickson v. West, 12 Vet. App. 247 (1999). If an organic disease of the nervous system, such as sensorineural hearing loss, becomes manifest to a degree of 10 percent or more during the one-year period following a Veteran's separation from qualifying service, the condition may be presumed to have been incurred in service, notwithstanding that there is no in-service record of the disorder. 38 U.S.C.A. §§ 1101, 1112 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.307, 3.309 (2011).

In the alternative, the chronicity provisions of 38 C.F.R. § 3.303(b) are applicable where evidence, regardless of its date, shows that a Veteran had a chronic condition in service, or during an applicable presumptive period, and still has such condition. Such evidence must be medical unless it relates to a condition as to which under case law of the United States Court of Appeals for Veterans Claims (Court), lay observation is competent.

Service connection may be established if a claimant can demonstrate (1) that a condition was "noted" during service, (2) there is evidence of post-service continuity of the same symptomatology, and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488 (1997).

For the purposes of applying the laws administered by VA, impaired hearing is considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of those frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2011). The Court, in Hensley v. Brown, 5 Vet. App. 155 (1993), indicated that 38 C.F.R. § 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service if there is sufficient evidence to demonstrate a medical relationship between the Veteran's in-service exposure to loud noise and current disability. The Board notes that the Court's directives in Hensley are consistent with 38 C.F.R. § 3.303(d).

Here, the Veteran contends that his current bilateral hearing loss is attributable to noise exposure while serving on active duty. First, the Board notes that VA audiology examination conducted in November 2009 shows a current bilateral hearing loss disability for VA purposes. 38 C.F.R. § 3.385. The Veteran served on active duty from January 1966 to January 1968. His DD Form 214 indicates that his military occupational specialty was light weapons infantryman, and he was awarded the Combat Infantry Badge. The Veteran has further stated on multiple occasions that he was exposed to noise during service from repeated artillery explosions and weapons fire. His in-service exposure to acoustic trauma is therefore conceded.

Relevant medical evidence consists of the Veteran's service treatment records as well as the report of a VA audiological examination conducted in November 2009. The Veteran's post-service treatment records from the Omaha VA facility are also of record. A review of the Veteran's service treatment records does not reveal that he complained of or was treated for any problems with hearing loss while in service, although he was seen on multiple occasions in January and February 1967 for what was diagnosed as severe otitis externa in his right ear, which resolved without residuals following treatment. In November 1965 at a pre-entrance medical examination, audiological testing revealed pure tone thresholds, in decibels, as follows:





HERTZ



500
1000
2000
3000
4000
RIGHT
0 (15)
0 (10)
-5 (5)
-5 (5)
-5 (0)
LEFT
-5 (10)
-5 (5)
-5 (5)
-5 (5)
-5 (0)

(NOTE: Prior to November 1967, audiometric results were reported in standards set forth by the American Standards Association (ASA). Those figures are on the left of each column and are not in parentheses. Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison, the ASA standards have been converted to ISO-ANSI standards and are represented by the figures in parentheses.) 

At the Veteran's November 1967 separation report of medical history, he was asked directly if he experienced any hearing loss. The Veteran answered "No" but did respond that he experienced "running ears," which was noted as ear infections in service. No effect on the Veteran's hearing acuity was noted, however. His November 1967 separation examination revealed pure tone thresholds, in decibels, as follows:





HERTZ



500
1000
2000
3000
4000
RIGHT
5 (20)
5 (15)
5 (15)
---
15 (20)
LEFT
10 (25)
0 (10)
0 (10)
---
0 (5)

A VA examination was provided to the Veteran in November 2009. Report of that examination reflects that the Veteran reported having been exposed to noise in service from repeated weapons fire and artillery explosions and having experienced loss of hearing acuity since that time. The Veteran also stated that he had not experienced any post-service noise exposure either occupationally or recreationally; in particular, he stated that he had worked as a truck driver and dairy farmer, which had not exposed him to noise. Audiological examination revealed bilateral sensorineural hearing loss. The examiner opined that the Veteran's bilateral hearing loss was less likely than not related to any in-service noise exposure. In so finding, the examiner noted the Veteran's normal hearing at his separation from service and pointed out that there was no significant progression of any decrease in hearing acuity between the Veteran's entrance and separation audiograms. She further noted, with respect to the Veteran's complaints of in-service experiences of loss of hearing acuity, that temporary losses could occur following exposure to loud noises. However, the examiner concluded that the lack of any significant decrease in hearing acuity at the Veteran's separation from service rendered it unlikely that he had experienced any permanent hearing loss during active duty. She reasoned that, instead, post-service noise exposure, aging, and post-service health problems had led to his current hearing loss. The examiner thus concluded that it was less likely than not that the Veteran's hearing loss was a result of his military service. 

Upon consideration of the above evidence, the Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for hearing loss. The Board concedes that VA examination confirms that the Veteran currently suffers from bilateral hearing loss. The Board concludes, however, that the greater weight of the evidence is against the claim. Here, even conceding the Veteran's exposure to acoustic trauma while in service, the VA examiner found no link between any current disability and military service based on the record,. Noting that the evidence did not show any hearing loss at the Veteran's separation from active duty, the VA examiner gave as her medical opinion that it was not at least as likely as not that any current hearing loss was related to the Veteran's military service, including to his acknowledged in-service exposure to acoustic trauma. Additionally, there is no medical evidence suggesting that sensorineural hearing loss became manifest to a compensable degree within a year of the Veteran's separation from military service. 38 C.F.R. §§ 3.307, 3.309. 

Furthermore, the Board finds persuasive the absence of medical evidence to support a finding of a nexus between the Veteran's service and his current hearing loss. In that connection, the Board notes that the medical opinion submitted by the VA examiner acknowledged the Veteran's complaints of in-service noise exposure and hearing loss that began in service but nonetheless concluded that it was less likely than not that the Veteran's current hearing loss was in fact due to in-service exposure to acoustic trauma or otherwise related to service. In so finding, the examiner looked to the Veteran's normal hearing at separation in finding that any current hearing loss was not likely related to service. This evidence is not contradicted by any other medical evidence of record; there is simply no medical evidence in the record supporting a finding of an etiological relationship between the Veteran's time in service, including his exposure to acoustic trauma, and his current hearing loss.

The Board acknowledges that the Veteran contended at his May 2011 hearing before the undersigned Veterans Law Judge that he first experienced hearing loss in service, following artillery explosions and weapons fire, and that the symptoms of hearing loss have continued to the present. In this regard, the Board notes that in order for the Veteran's claim of service connection for bilateral hearing loss to be granted, the record would have to contain competent and credible evidence linking his current disability to his military service. As discussed above, the VA examiner considered the Veteran's contentions as well as the available medical evidence in specifically concluding that it was less likely than not that any current hearing loss was etiologically linked to service, including to his in-service exposure to acoustic trauma. The examiner offered a clear explanation for her opinion, relying on the Veteran's medical history and her medical expertise, as well as current medical knowledge, in concluding that any connection between the Veteran's currently diagnosed hearing loss and service was doubtful. 

Moreover, the Veteran was noted in his November 1967 separation report of medical examination to have normal hearing on audiological testing. Tellingly, at that time, the Veteran specifically stated on his November 1967 separation report of medical history that he was not experiencing any hearing loss. Consequently, based on the Veteran's own contemporaneous report of his hearing acuity, it cannot be concluded that he had symptoms of decreased hearing acuity that began in service and have continued without interruption to the present. This in-service evidence contradicts the Veteran's version of events regarding the continuity of symptomatology of his bilateral hearing loss. Additionally, when considering the Veteran's contentions, the VA examiner nevertheless concluded that his current hearing loss was less likely than not related to service. Post-service information in treatment records refers to a diagnosis no earlier than 2009, following the Veteran's claim for benefits. All of this medical evidence leads to the conclusion that the Veteran's statements regarding in-service experiences of hearing loss that continued to the present are not credible. Indeed, it appears very unlikely that the Veteran would have noticed loss of acuity when test results showed that he in fact had normal hearing acuity at separation.

Furthermore, as a layperson without the appropriate medical training and expertise, the Veteran is simply not competent to provide a probative opinion on a medical matter, such as an etiological relationship between current hearing loss and military service. See Bostain, 11 Vet. App. at 127. As noted above, the Board acknowledges that the Veteran has reported that he first experienced a loss of hearing acuity during service that has continued to the present. The Veteran is competent to provide testimony concerning factual matters of which he has first-hand knowledge (i.e., experiencing symptoms either in service or after service). See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007); Washington v. Nicholson, 19 Vet. App. 362 (2005). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a lay person is competent to identify the medical condition, (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether the evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr, 21 Vet. App. 303. However, in this instance, the Veteran's report of continuity of symptomatology of hearing loss is not supported by the other evidence, particularly the opinion of the VA examiner, who examined the Veteran, considered his contentions, and nevertheless concluded that the Veteran's version of events was not the most likely explanation. His version of events is, as noted above, also contradicted by the separation examination report in November 1967, which reflected normal hearing bilaterally.

In so finding, the Board finds particularly persuasive the Veteran's negative responses on his November 1967 report of medical history, when he responded "No" when asked directly if he experienced any hearing loss. This medical information-provided contemporaneously with his time on active duty-directly contradicts the Veteran's claim that he first experienced hearing loss during service and has had symptoms of the disability continuously since that time. The absence of any indication in the record until after the claim was filed in 2009 also supports the conclusion that the Veteran did not experience hearing loss during service or shortly thereafter. Consequently, the Board finds that the Veteran's assertion of having developed hearing loss while on active duty that has continued to the present is not credible.

Relevant law and regulations do not provide for the grant of service connection in the absence of competent evidence linking the current disability to service. The Board is satisfied that the VA examiner's opinions are adequate for deciding this appeal. The VA examiner's November 2009 medical opinions, which are based on the entire record, including the Veteran's own history, is that the Veteran's hearing loss is not at least as likely as not related to military service. Because the VA examiner's opinion is not controverted by any other medical evidence of record, in light of the foregoing analysis and the underlying facts, the Veteran's service connection claim for hearing loss must be denied.

In reaching its conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim of service connection for hearing loss, that doctrine is not applicable. See 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 



ORDER

Entitlement to service connection for hearing loss is denied.



_________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs