NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STEVEN J. LALLISS,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2020-2241

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-20-0005-W-1.

---

Decided:  March 4, 2021

---

STEVEN LALLISS, Roseville, CA, pro se.

BRENDAN DAVID JORDAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by REGINALD THOMAS BLADES, JR., JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.; COLEEN LOUISE WELCH, Office of General Counsel, United States Department of Veterans Affairs, Martinez, CA.

---

Before LOURIE, MAYER, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Steven J. Lalliss, M.D., appeals a final decision of the Merit Systems Protection Board ("board") denying his request for corrective action and rejecting his claim that he was terminated from his position with the Department of Veterans Affairs ("VA") in reprisal for making protected whistleblowing disclosures. *See Lalliss v. Dep't of Veterans Affairs,* No. SF-1221-20-0005-W-1, 2020 MSPB LEXIS 2252 (June 2, 2020) ("*Board Decision*"). For the reasons discussed below, we affirm.

## BACKGROUND

In October 2017, Lalliss, an orthopedic surgeon, was appointed to a position at a VA medical facility in California. *See* Supplemental Appendix ("S.A.") 141. His appointment was subject to a two-year probationary period. S.A. 141.

In February 2018, Lalliss asked his supervisor, Arnoldas Kungys, M.D., for a compressed work schedule, but Kungys denied this request. *See* S.A. 142–45. Kungys expressed reservations about compressing Lalliss' work schedule given that Lalliss had previously had difficulties accommodating late and unscheduled patients. S.A. 142, 146. Additionally, Kungys stated that Lalliss had been "complaining and demanding with the support staff when they [were] unable to meet [his] unrealistic expectations." S.A. 143.

On March 26, 2018, Lalliss filed a complaint with the VA's Office of Inspector General ("OIG"). *See* Addendum to Petitioner's Informal Brief ("APB") at 12–14; *see also Board Decision*, 2020 MSPB LEXIS 2252, at *3–4. He alleged that other physicians in the VA's Orthopedics Department did not see the full number of patients that their schedules called for. *See Board Decision*, 2020 MSPB LEXIS 2252, at

*4. The OIG determined that Lalliss' complaint was unsubstantiated. *See id.*

In May 2018, Kungys held an informal counseling meeting with Lalliss. S.A. 149. Minutes of this meeting indicate that Kungys informed Lalliss that numerous VA employees had reported that he was "creating a negative work environment" and that he had exhibited "[u]nprofessional behavior" in his interactions with VA staff members. S.A. 149 (internal quotation marks omitted). Furthermore, while Lalliss had asserted that he wanted to see more patients, he "behave[d] unpleasantly" when asked to see an additional patient. S.A. 150.

In a letter dated November 2, 2018, Kungys asked a VA Professional Standards Board ("PSB") to recommend terminating Lalliss "while on probationary status on the grounds of unprofessional conduct in his interactions with his colleagues and clinic support staff, dishonesty, deferring/turning away patients and episodes of gross insubordination." S.A. 177. Kungys stated that Lalliss' "behavior ha[d] poisoned the [o]rthopedic service work environment and morale" and that "[h]e continue[d] to behave in a [distrusting,] unprofessional manner in his interactions with colleagues [and] clinic and hospital support staff while performing his assigned duties." S.A. 177.

In January 2019, the PSB recommended that Lalliss be separated from the VA "due to overwhelming evidence identified during the review process." S.A. 185. The PSB identified "numerous deficiencies in conduct . . . including unprofessional communication with colleagues and staff, lack of candor about patient care and staff interactions, as well as creation of a toxic work environment within the department." S.A. 185.

On February 19, 2019, the VA informed Lalliss that he would be removed from his position. *See Board Decision*, 2020 MSPB LEXIS 2252, at *12. Lalliss then filed a complaint with the Office of Special Counsel ("OSC"), alleging

that some of his colleagues at the VA were seeing "only four or five patients per day and noting that he had made the same disclosure to the OIG in March 2018." *Id.* The OSC declined to take action on Lalliss' complaint. *Id.*

Lalliss subsequently filed an individual right of action appeal with the board, arguing that the VA removed him in retaliation for protected whistleblowing activity. *See* Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112-199, 126 Stat. 1465; Whistleblower Protection Act of 1989 ("WPA"), Pub. L. No. 101-12, 103 Stat. 16. On June 2, 2020, an administrative judge of the board denied Lalliss' request for corrective action. The administrative judge determined that Lalliss' March 2018 disclosure to the OIG, which asserted that certain VA physicians were not seeing an adequate number of patients, qualified as a protected disclosure and that it was a contributing factor in his removal. *See Board Decision*, 2020 MSPB LEXIS 2252, at *20–25. She concluded, however, that the VA had established that it would have removed Lalliss even in the absence of his protected disclosure. *Id.* at *26–31. According to the administrative judge, the VA had "very strong" reasons to remove Lalliss for his unprofessional conduct, *id.* at *29, given that "[e]very witness with firsthand knowledge of [Lalliss'] conduct, aside from [Lalliss] himself, uniformly testified that [he] routinely behaved in ways that were disruptive, that were inconsiderate to other staff members, and that led colleagues to distrust him and to avoid interacting with him," *id.* at *27.

Lalliss then appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review of a board decision is limited. Pursuant to 5 U.S.C. § 7703(c), a board decision must be affirmed unless it is found to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule,

or regulation having been followed; or (3) unsupported by substantial evidence." *See Chambers v. Dep't of Interior*, 602 F.3d 1370, 1375 (Fed. Cir. 2010).

The WPA, as amended by the WPEA, prohibits an agency from taking a personnel action because of a whistleblowing disclosure or activity. *See* 5 U.S.C. § 2302(b)(8); *id*. § 2302(b)(9). If an employee proves by a preponderance of the evidence that he made a protected disclosure that contributed to an agency's action against him, "the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1364 (Fed. Cir. 2012) (citation and internal quotation marks omitted). In determining whether an agency has established that it would have taken a personnel action even in the absence of a protected disclosure, the board generally considers the following three factors: (1) "the strength of the agency's evidence in support of its personnel action"; (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision"; and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. SSA*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

On appeal, Lalliss challenges factual findings made by the administrative judge related to each of the *Carr* factors. As to the first *Carr* factor, Lalliss argues that the administrative judge made "serious errors" when she determined that the VA had very strong reasons for removing him from his position. APB at 5. In support, he contends that although the administrative judge stated that he was "unique" in his refusal to see patients who arrived late to their appointments, *Board Decision*, 2020 MSPB LEXIS 2252, at *26, other VA physicians also refused to see late patients on occasion, *see* APB at 5–6. Lalliss contends, moreover, that "[i]n over a year of patient care, the agency

only had possible evidence of two" instances in which he refused to see patients who were late. *Id*. at 6.

Additionally, Lalliss challenges the administrative judge's statement that "Kungys testified that he received complaints regarding, and personally observed, [Lalliss] yelling in the clinic that fraud was occurring and that the department needed to see more patients." *Board Decision*, 2020 MSPB LEXIS 2252, at *5; *see* APB at 12. According to Lalliss, Kungys only testified that he was "mumbling loudly" about alleged fraud, rather than yelling. APB at 12. Lalliss argues, moreover, that at least two agency employees reported that they had good relationships with him. *See id*. at 7.

As to the second *Carr* factor, Lalliss asserts that the administrative judge incorrectly determined that the VA had only a "slight" motive to retaliate against him. *Id*. at 8. According to Lalliss, Scott Hundahl, M.D., the Chief of Surgery, had a strong incentive to retaliate against him for his disclosure regarding doctors who were allegedly not seeing an adequate number of patients since Hundahl was "responsible for the Orthopedic Department" at the VA. *Id*. As to the third *Carr* factor, Lalliss contends that the administrative judge erred in determining that there was no evidence that the VA failed to take disciplinary action against similarly situated agency employees. *Id*. at 10.

Having considered the arguments advanced by Lalliss, however, we conclude that the administrative judge's analysis contains no legal error and that her factual findings are supported by substantial evidence. *See Briley v. Nat'l Archives & Records Admin.*, 236 F.3d 1373, 1377 (Fed. Cir. 2001) (emphasizing that it is not this court's function to "retry[] factual issues decided . . . by the [b]oard"); *see also Parker v. USPS*, 819 F.2d 1113, 1115 (Fed. Cir. 1987) ("In determining whether the board's decision is supported by substantial evidence, the standard is not what the court would decide in a *de novo* appraisal, but whether the

administrative determination is supported by substantial evidence on the record as a whole."). The administrative judge thoroughly evaluated the record—including both the testimony and documentary evidence presented—and reasonably concluded that the VA had strong reasons for removing Lalliss even in the absence of his protected disclosure. *See Board Decision*, 2020 MSPB LEXIS 2252, at *29.

The VA presented extensive evidence that Lalliss treated other agency employees in a rude and unprofessional manner, *see, e.g.*, S.A. 142–43, 146, 148, 149, 154, that he improperly refused to refill a patient prescription, S.A. 180, and that he refused to see patients who were late, including a patient who had driven over three hours to consult with him, S.A. 164. VA employees testified that Lalliss behaved in a way that "led colleagues to distrust him and to avoid interacting with him." *Board Decision*, 2020 MSPB LEXIS 2252, at *27. This testimony was "corroborated by ample documentary evidence including many unsolicited complaints about [Lalliss], contemporaneous emails of . . . Kungys documenting his investigation of complaints regarding [Lalliss], and the written statement of a patient whom [Lalliss] refused to see." *Id*. at *27–28.

Although Lalliss "categorically denied engaging in any of the conduct alleged by the agency and testified that every instance of alleged misconduct was either entirely fabricated or a misrepresentation," the administrative judge did "not find [Lalliss'] denials credible in light of the substantial and consistent documentary and testimonial evidence of [his] misconduct." *Id*. at *29. We see no basis in the record to set aside the administrative judge's conclusion that the testimony of VA employees, such as Kungys, regarding Lalliss' conduct was more persuasive than his own account of his actions in the period prior to his removal. *See, e.g.*, *Pope v. USPS*, 114 F.3d 1144, 1149 (Fed. Cir. 1997) (explaining that this court will not disturb the

board's credibility determinations unless they are "inherently improbable or discredited by undisputed fact").

Nor did the administrative judge err in concluding that the VA had only a "slight" motivation to retaliate against Lalliss. *Board Decision*, 2020 MSPB LEXIS 2252, at *30. As the administrative judge correctly recognized, Hundahl could potentially have had some interest in retaliating against Lalliss given that his OIG complaint alleged that certain VA physicians were not seeing enough patients and Hundahl "was the second line supervisor over the department where the alleged wrongdoing was occurring." *Id.* Importantly, however, since there was "ample evidence that orthopedists did not, as [Lalliss] claimed, see fewer patients than their schedules called for, there [was] little reason to think that [Lalliss'] intention to make a disclosure would have given . . . Hundahl cause for concern or provided [a] motive to retaliate." *Id.* There was no persuasive evidence, moreover, of any retaliatory animus on the part of the members of the PSB that recommended removing Lalliss. *See id.*

We likewise reject Lalliss' assertion that the administrative judge failed to properly evaluate the third *Carr* factor, which assesses whether there is any evidence that an agency took disciplinary action against employees who were similarly situated but who were not whistleblowers. *See Carr*, 185 F.3d at 1323. Although Lalliss argues that another VA physician refused to see a late patient and yet was not subjected to any disciplinary action, the VA decided to remove Lalliss not only because he refused to see late patients but also because he treated fellow employees in an unprofessional and discourteous manner. *See, e.g.*, S.A. 177–78. Lalliss fails to show, therefore, that he was similarly situated to the other VA physician who purportedly declined to see a patient who arrived late to an appointment. *See Carr*, 185 F.3d at 1326 ("For an employee to be considered similarly situated to an individual who is disciplined, it must be shown that the conduct and the

circumstances surrounding the conduct of the comparison employee are similar to those of the disciplined individual.").

We reject, moreover, Lalliss' claim that "[t]he administrative judge failed to consider or even read [his] appeal to the board or his statement of facts." Petitioner's Informal Brief at 3. The fact that the administrative judge did not specifically discuss all arguments advanced by Lalliss does not mean that she failed to properly consider them. *See Lowder v. DHS*, 504 F.3d 1378, 1383 (Fed. Cir. 2007); *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007). We have considered Lalliss' remaining arguments but do not find them persuasive.

## CONCLUSION

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

## AFFIRMED